Good morning, Your Honors. Peter Burson, appearing for the appellant, Steve's Ag Services Limited. I would like to focus first on Burlington's debt relief action with respect to the DNLR's claim against my client. As we know from Dairy Road Partners, they had the burden of showing that there was no possibility that the DNLR's claim was covered under my client's insurance policy. And with respect to my cross-motion for summary judgment, all I have to show, my burden of proof, is that there was a possibility that this claim was covered. So that's where we start. I'd like to move quickly to the insurance policy, which is a fairly straightforward standard CGO policy. I wonder if I could inquire on something here. Counsel, what role does the defense requirement play vis-a-vis the CGL section J5, J6 that talks about any operations performed on behalf of the insured are not covered? I'll focus on that. That's the And this simply is not a case where the business pursuits exclusion applies. Typically, the business exclusion applies when you have some kind of a contractual relationship between the insured and somebody's, some other person who he's either sold products to or he's performed services for. And typically, it arises oftentimes in the contractor homeowner situation. You're saying that the fact that the occurrence was one vis-a-vis the state and Steve's, I'll call it, is different than if the claim had been made by the estate. Absolutely. That's what this the business exclusion section covers. Absolutely. And the case I cited to the court was the Mount Pauly case. It's right at the end of my argument, not the beginning, so I'm going to turn a few pages for you. The Mount Pauly case that I cited to the court basically says that your work portion of the business exclusion language in CGL policy simply does not apply to third parties such as the state of Hawaii. It does not, your work cannot impact the state's claim against Steve's Ags at all in utilizing this business pursuits exclusion language. And really, that holds true with respect to all the business pursuit exclusions in their policy. It doesn't apply to a third party here. Typically, that language is to prevent situations where the CGL policy is acting like a performance bond, where there's defective work performed or there's a defective product sold and the insured gets sued by the party who bought the product or for whom the services were provided. They turn the claim back over to their insurance carrier for defense and consistently the courts hold that is not a risk that CGL policies were designed to protect against. So CGL policies would not apply in a product liability situation because they wouldn't be contained in such policies, is that right? Unless there's a specific, certain policies do have product liability language where such a claim could be included, but typically no. And I think the Sterla case, which is cited by Appoli, actually explains the difference between the risks that are included in the business exclusion setting and those that are not. And it's a very instructive case and it cites a New Jersey case as well that that talks about the difference between those risks that are covered and those that are not. And the court in Sterla basically stated, like the New Jersey court, we believe the risks insured by the standard form policy are injury to people and damage to property caused by faulty workmanship. So, in our case... 2203, that's a 1984 case. Okay, and it's called Sterla? Yes, S-T-U-R-L-A versus Fireman's Fund. And going back to the faulty workmanship argument, there is no assuming that it was faulty workmanship in the first place. I mean, our position in this claim is he didn't really do anything wrong. He was never on the state's property, something which was never proved in the administrative hearing that he was even on the state's land. But at the time, the claim was initially submitted by the DNLR. That was their contention. But assuming that what he did was faulty because he was on their property, I'm not sure that qualifies under the definition of faulty. The result of that faulty workmanship was injury to a third party vis-a-vis the state's treaties, which triggered the property damage claim. Mr. Person, why isn't all of this excludable as property damage? Why isn't it excludable as property damage? Why isn't all of this excludable? In other words, property damage which, by the terms of the policy, is excludable. The policy doesn't exclude, as far as I understand the policy. The policy, the insuring clause, states this insurance applies to bodily injury and property damage caused by an occurrence. Property damage is defined under the policy as physical injury to tangible property, including all resulting loss of use of that property. The DNLR's claim, as set forth in their draft enforcement action found in Excerpt of the Record 114 to 120, states the enforcement action, this is enforcement action involving removal of koa trees unauthorized on state unencumbered land. So the fundamental nature of this claim was for property damage. The destruction of the trees. Was for property damage. Yes, absolutely. For the damage to these trees that were destroyed, sold, and the... But why isn't that excludable on the language which excludes such coverage to that particular part of real property in which you or any contractors or subcontractors working directly or indirectly on your behalf or performing operations, if the property damage arises out of those operations? The property damage, number one, I'll get to, there's two parts to that question. First of all, my position is the property damage did not arise out of the operations. The operations were per the contract with the Damon Estate to log trees on Damon's Estate property. That was what he was hired to do. The allegation by the DNLR was that he exceeded the operations he was hired to perform and cut trees outside the scope of his assigned task and contract, trespassed onto their land and cut their trees. So I don't think it really arose out of the operations. It arose as a result of a mistake and an accident which was, I mean, alleged to be, which is set forth in my client's declaration, that he incorrectly set the boundary when he went up into the wilderness and spent a few days trying to determine what that boundary was. Second of all, I'm not sure this is a real property exclusion, which you just read, because the trees, once they are cut, the trees are personal property. They were then sold and money was obtained and paid to my client and paid to the Damon Estate, so I don't think the real property exclusion is applicable here. It's personal property, not real property. Let me get back to this Sterla case. Yes. Now, how do you contend Sterla helps you in this case? Sterla helps me because it goes into detail in explaining what the business risk exclusion is intended to do in these CGL policies. But in that case, right, the court held there was no duty. That's correct, because in that case there was no third party involved. The claim was a contractor sold the carpeting to a homeowner. The carpeting faded and was defected, and so he got, the contractor got sued by the homeowner. The homeowner, rather the contractor, turned it over to a CGL policy. They said no, this is not what these policies are intended to do. It's not intended to be a performance bond. That's not one of the risks that a CGL policy covers. But in our case, the injury and the damage was to a party that was not part of a contract, vis-a-vis the state of Hawaii. There was no contractual relationship whatsoever. Well, Sterla has nothing to do in this case, with our case. Only to the extent, your honor, that it kind of goes into a discussion about the business pursuits exclusion, when it is applicable, when it's not applicable. You're correct. It really had no specific relationship to that case, because in Sterl, they found that there was a specific contract exclusion in that policy, which was applicable. But they went on to discuss those situations where the business... In the case you depend on as being, you know, direct, directly applicable, the Mount Holy case, right? Yes, the Mount Holy case, which talks about your work, and that specific your work is in the Burlington policy, states... It has to be sort of within the scope of the contract. Correct. Not work that involves an innocent third party. According to that case. I follow you. Thank you. Okay. What else can I help the court with? This is easier for me to answer your questions and clarify. It isn't part of the issue here of the foreseeability issue. I mean, it seems to me that your client went out, apparently had some extensive, made some extensive efforts to try to locate the boundaries. Apparently the state has done the same and is not, I'm going to ask him about this, has not ever been able to identify the boundaries either. Is that your contention, that this was a mistake? Oh, absolutely. And that it is for that reason that most of the things that would exclude coverage go away? Absolutely. In fact, the evidence in the record is uncontroverted. The only evidence supplied with respect to whether the cutting of these trees was intentional and wrongful or accidental, by mistake, was the declaration submitted by Steve Vasquez, the owner and proprietor of Steve's Ag Services. Well, if your argument is that it's a mistake, how does that help you with the definition of occurrence? Because an occurrence is accidental. Let's go back to the policy and when the insuring agreement says this insurance applies to bodily injury and property damage caused by an occurrence, an occurrence is then defined as an accident, including... So the mistake is the accident, from your point of view? Well, not only my point of view and the multiple, multiple cases that I cited, some of which are directly on point. I supply to the court three tree removal cases from different states where the facts were directly on point, where a contractor, for one reason or another, by mistake, trespassed onto an adjacent neighbor's property, cut down trees, and got sued by the adjacent neighbor, turned it over to his CGL policy. The arguments offered by the insurance carriers in all those cases were the same, which was the same that Burlington is making in this case. Because you cut the trees you intended to cut, it can't be accidental. And that's where the Hawaiian holiday case comes in, right? Yes. Forcibility is the issue. Absolutely, and the law is very clear that you look at what they did from the standpoint of the insured. So just because he cut a tree that he intended to cut, knowing that it was going to fall down, if he did not expect that that act would cause resulting damage, it is an occurrence, it is an accident. Speaking of the Hawaiian holiday case, now that leads to the to the estates lawsuit, right? Now, why aren't all those, you know, contract-based, all the claims in the game in the state case? I'd like to address that. I'm happy to do that now, Your Honor, or I would, if you want to finish up the discussion on the DNL-R claim, if there are any more questions. This is your opportunity. The reason I'm asking is because I don't have a clock. I don't know how much time you have left. Less than five minutes. Okay, I will get to that, Your Honor. I would like to finish up the DNL-R case, because that's the major case. That's the case where considerable fees were spent by my client defending himself. I want to point out to the Court on that issue, on the coverage issue, was there a possibility that I submitted the final report from Burlington Insurance Company in October of 2003, after investigating this claim for 15 months. They issued a final report and they said, provide your insured a coverage questions here, hired an attorney, and literally within a day or two, they sent out the denial letter. I mean, I believe that evidence in and of itself. Yeah, well, we can't rely on that. I mean, obviously it happened, but is that probative of anything? I think that it creates an issue of fact, whether or not it was coverage. Yes, absolutely. This is their agent who they hired to do this time doing it and issue a final report and say, provide a defense, and the next day they don't. I mean, yes, I think that creates an issue in and of itself that there was coverage. But I believe and maintain as a matter of law, there was coverage for this claim. This is a classic case of an occurrence in a CGL policy. I mean, it's not unusual. This is a classic case of an accidental property damage claim to a third party that is typically covered by CGL policies. I don't think there's any question about it. The Damon Estate, I will acknowledge, is a much more problematic claim because it's derivative in nature. I mean, the Damon Estate was an additional insured under Burlington's policy, and Burlington, I believe, had a duty also to defend them for all the same reasons that, you know, I talked about in the D'Avala case, and that is specifically Mr. Baskowitz did not know he was cutting trees that were in a conservation district. Not only did he not know it, but apparently nobody else from the Damon Estate, including the ranch manager, knew it. And he... You may want to respond to Justice, Judge Tichina's question. Okay, contract-based, that's arguable, Your Honor, because it's a claim that was made based on the negligence of Steve's Ag Services, the negligence in not making sure that these trees were not in a conservation district. And in addition, the claim by the Damon Estate against Mr. Baskowitz was one for equitable indemnity. They were in a catch-22. They had an opportunity to settle the claim with the DNLR, and it was a good settlement. They kept bugging Burlington Insurance Company for a defense, and never got a response. They just left them hanging out to dry, so they did not want to pass up a good settlement, and so they settled the case, and they paid $200,000 plus. And, you know, then they went after my client for reimbursement for a claim that really derives back to the Damon Estate as an additional insured under their policy. So, it's arguable. It's not that clear whether it's a contract-based claim or not. If you really look at, fundamentally, why did they sue us? It really goes back to that same breach of contract by Burlington. Are there any other questions, or things that I could clarify for the Court? No, thank you, Counsel. Thank you. We'll hear from the insurance company. Good morning, Your Honors. May it please the Court, Michael Proe of Martha Knox Holden & Proe, representing Burlington Insurance Company, with me at the Counsel table today is Ralph O'Neill of the McDonnell Rudy Firm. This case is controlled by the Ninth Circuit's own decision just a few years ago in Burlington Insurance Company v. Oceanic Design, a 2004 decision applying Hawaii law to many of the same coverage issues that are being addressed here today. We did not write on a blank slate here as to Hawaii law on many of these issues, including the definition of an occurrence when there's been purposeful conduct, including the premise that to the extent a claim arises out of a contract or a contractual relationship, even if it's pled by non-contractual theories, it's still not going to come within the definition of an occurrence. Counsel, what is your response to your opposing counsel's suggestion that the exclusion regarding work done on property doesn't apply here because that only applies when the insured and some other party are directly involved as opposed to a third party? Well, there's certainly no contractual basis for that argument and nor does it particularly make sense since these are third-party liability policies. Of course, they do cover generally claims asserted by third parties. If it only covered, if it only applied to a contract claim, the contract claim isn't covered anyway, so it wouldn't make any sense that there certainly, we can just look at the language of the exclusion, the insurance shall not apply to property damage to J-5, that particular part of real property on which you or any contractors or subcontractors, etc. You read it earlier. Right. There's no limitation there to if you have a contract with the plaintiff or only if you are in contract with the plaintiff and are breaching that and nor would it make sense to read that sort of additional limitation into the exclusion. What is a sidetrack agreement? I'm looking at the exclusion of the policy. Well, it's interesting. I had that thought in some of my earlier cases handling CGL policies. It's such a funny term. It actually has to do with old railroad cases that there used to be sidetrack easement issues and cross liabilities and indemnities and so. It has nothing to do with Judge Ito. Am I missing the reference, Your Honor? It's a sidebar. Oh, right. No, I think it's an old railroad term of art, if I may, but I'm not sure there are railroad issues in this case, so we may move. I won't argue the sidetrack agreement in too much detail or the sister ship exclusion, which has to do with ships. But if I can get back to the exclusions, there was some discussion of exclusion L, damage to your work. Again, I believe counsel indicated only, you know, only work pursuant to a contract. There's no limitation there. In fact, the definition of the work is any worker operations. But back more specifically to J5 and J6, I think there was an argument counsel asserted, which I think I may be hearing for the first time, but once the trees were cut, they became personal property. But I think that still damage to real property, the trees, may have converted them into personal property, I suppose, once they're, you know, carved and made into whatever they're made into, their personal property as well. But the damage was allegedly to the trees. Counsel, is it fair to say that on the issue of foreseeability that they may have something of an argument there, that under Hawaiian holiday, you know, the state doesn't quite seem to know where the boundaries are, the contractor, the estate doesn't seem to know where the boundaries are, according to the allegations Steve's tried to find out where it was. So you're not so much arguing that that isn't the issue, but rather because of the exclusions it doesn't matter. Is that basically what your position is? Let me address the initial issue of the coverage grant and Hawaiian holiday, because I think, in fact, Hawaiian holiday strongly supports our position in this case. In Hawaiian holiday, and the answer is, I think, under Hawaii law, the complaint allegation rule governs the duty to defend under both Hawaiian holiday and Oceanic Design, you know, the Ninth Circuit decision a few years ago, that was fairly clearly emphasized. And in both cases, I think there were arguments that, well, how in light of this complaint can you rule out, I think, in the Hawaiian holiday case, it had to do, well, couldn't this planting of the macadamia nut seedlings have been negligent, or couldn't the planting at the same time as the grass was planted have been negligent? And the Hawaii Supreme Court said, no, the underlying plaintiff is basically, I mean, I'm paraphrasing, the master of his complaint. If you're going to read this complaint, the plaintiff has sued on breach of contract and fraud theories, and the very conduct that it is pointing to, the planting of the seedlings and the planting of the grass at the same time, is the very conduct underlying that breach of contract and fraud claim. So we don't need to speculate to, you know, negligence claims that could or could not have been based on the same conduct. I think why that matters so directly here, Oceanic Design, the issue was contract versus non-contractual claims, and the Ninth Circuit panel made the same analysis, that here the allegations are contractual. Why that matters here is it's a little tricky to make sure you don't have a complaint. In fact, one of our arguments on duty to defend is, there's no suit here. So you don't have a formal pleading by which to compare the complaint allegation rules. However, we understand, you know, the district court reached a contrary conclusion and said this sort of civil proceeding administrative process was within the definition of civil proceeding, therefore could be a suit. So then we have to say, okay, what is the charging document, so to speak, that we are going to apply this complaint allegation rule to? It becomes a little trickier. There is a letter that the DLNR sent outlining some of its positions and accusations. That's probably as close as we get. So applying the complaint allegation rule to this non-complaint context, we do have a letter. Clearly the DLNR was proceeding on the basis that it had claimed this property for some time, that its boundaries that it thought were clear enough that the insured could have determined them within a matter of tens of feet. And in fact, in the actual letter that they sent outlining their charges, they say he crossed the boundary by 1,500 feet. Let's just assume, arguendo for a moment, that nobody knows where the boundaries are. The state doesn't know, the insurance company doesn't know, Steve doesn't know, nobody knows. It's just out there and nobody's really calculated it. Under your analysis of the case, at the end of the day, does that actually make any difference? It doesn't, and I can, among the reasons why, are it's still not an accident. The cutting of tree damages the very tree. It's intended to be cut. The restitutionary measure of damage is for those trees where you have to cough up the illicit or wrongful gain. But isn't that kind of a circular, because under Hawaiian holiday it's an accident. If it's not foreseeable, rather it, let me read the language here, that the injury is expected or reasonably foreseeable result of the insured's own intentional acts or omissions. It doesn't kind of make it circular. If it's foreseeable, then it can't be an accident. If it isn't foreseeable, or rather I got it backwards there. I think I understand, Your Honor, where I would, I would say that quote helps us here because the act, the injury-causing act, is the cutting of the tree. The person says it was a mistake, therefore it was an accident, therefore it was an occurrence. What's your response? It's not an accident because it's purposeful conduct to cut the tree and lay the road. Those aren't things that just happened by forces beyond their control. They're things that they consciously, volitionally went out and did. Cut trees and laid a road. What's your best case for that proposition, that it's not an occurrence? Oh, Hawaiian holiday. Hawaiian holiday. Oceanic design is very good too. Both clearly, if you have purposeful conduct, that's not an accident. So the foreseeability here, from their perspective, has to do with the description of the property where they were doing it. From your perspective, the the accident or occurrence nexus, if you will, has to do with the cutting of the where the property is. They intentionally cut the trees. It can't be an accident. Correct. And but if I can go, I think, take it one step beyond that. The state's theory, the state's pleading for which a defense was sought, was plainly that these were on their property and were wrongly cut. If the state recovers, it recovers on that theory, which is not covered. If the state does not recover, there's still not a covered judgment. So this duty to defend isn't just in the abstract. You dispute a claim, you know, you think you should get a defense by your carrier. It has to be a potential of covered damages being awarded. And here, there was not that potential. The liability defense that Steve's ultimately settled on and apparently prevailed upon, at least without prejudice, on establishing ownership of the land is neither here nor there on a coverage issue. He raised and prevailed, at least in the interim, on a liability defense. But it doesn't change the fact that had the state prevailed on its covered. So there was never a potential for coverage, never a duty to defend. The fact that the state is making these allegations and Steve disagrees with them, that's a dispute between them. But if the state is right, it's not covered damages. He's being asked to give back the proceeds of his taking this tree off their state property and selling it. Well, he's also being asked to you know, pay for whatever they do to reforest the land. Right, and again looking at the letter, the reference there is to the building of the road and the damage to the forest ecosystem from that. And so I want to make clear that we certainly believe that's not an occurrence because it's not an accident. It's just personal conduct and what you would expect to happen. The trees would be damaged and to the extent you're laying a road down, you would expect that to impair the immediate area where you're laying down the road. So none of that is accidental. Nevertheless, the court also asserted a public policy rationale, several courts have found, against insurance for fines or for disgorgement remedies. With the idea being that, you know, claiming insurance for a disgorgement remedy is basically to allow someone to keep the proceeds of what they had done. Are you familiar with that Monopoly case that Mr. Burson depends on? I'm generally familiar. It's a, as I recall, a it has a lot to bear on Hawaii law. I think, you know, to the extent we're talking about some of these exclusions, the language of the exclusions is clear enough. I think if there's a principle being advanced that the business risk exclusions don't apply if your faulty work or your faulty product causes some other damage to a third party, that's as a general proposition. I can't say that's all that monumental anyway, but here the damage is to exactly what he was working on. It's to the trees and the real property and the personal property on which he was working. It's not that there's some other resulting or consequential third-party damage that occurred. It's exactly what he's doing. So this is within STERLA, and STERLA quotes Weto of the New Jersey Supreme Court, where you're talking about where the damages is really, you know, the very work you're doing. That's not. Let me just get this clarified. For purposes of the oceanic designs argument and Hawaiian holidays, you're saying that it's this, because there's no complaint in this case, it's the state's demand that takes the place of the complaint, and if that demand, if accepted as true on its face, would never be entitled to coverage, there was no duty to defend. Is that based on your position? I mean, I don't want to waive my following argument, which is that in any event where the duty to defend under this policy extends only to a suit, there cannot have been a duty to defend anywhere here because there was not a suit by the DLNR. There were just this administrative investigation. Settings and Judge King did not agree with me on that argument. I don't want to beat a dead horse, but we did preserve the issue for appeal. There's the California Supreme Court case right on point. Foster Gardner goes through that analysis in some detail and agrees that the plain meaning of a suit is a suit, and is that if you... Which would have excluded a state procedure? There would just be no duty to defend because there's no suit, right, this administrative investigation. Given that we are in that quandary, how do you, and the Hawaii Supreme Court and Ninth Circuit standards on duty to defend in articulating a complaint allegation rule say you compare the language of the complaint to the language of the policy to decide a duty to defend. Well, it does kind of beg the question of how you do that when there is no complaint, you know, feeding back into perhaps the wisdom of the Supreme Court of California and Foster Gardner on that. Setting aside that whole host of issues, I think that's what we're left with to the extent we are to determine the state's charges against which a defense is being alleged, that what we have to go on is that record. I think there were references... I'm sorry, there was a reference, I believe, counsel for the insured Mr. Burson indicated the only evidence that this was accidental and therefore he thought in his favor on this issue was Mr. Baskowitz's declaration submitted in November of 2005 in this case, which is of course long after the claim was denied. There is language, certainly it meshes well with the complaint allegation rule that a carrier can consider the complaint and the policy in determining a duty to defend. If an insured comes up with a declaration, you know, later after the fact, I suppose even at the same time, saying well sure I've been charged with all of this bad conduct but I didn't really do it and it was all a mistake, etc., that doesn't factor into the analysis of duty to defend. Certainly a claim was denied, I think, would have a hard time giving rise to a duty to defend, but even setting aside more fundamentally, the insured by its defenses or its affidavit or declaration can't change the nature of the claim that's being asserted against it by the charging party, by the complaining party, and it's the nature of those allegations against which the defense duty has to be determined here. And as a result of that, they're really, if you think of a few results here, there's the state wins and the award and the fines and the restitution are not insured or insurable or the state loses and gets nothing. Either way, there's no covered damages and thus there's no potential for coverage, no duty to defend. That's why the fact that a disputed claim may be disputed doesn't really matter if the charging allegations aren't covered. So that's kind of worked through, I think, probably most of my outline, even if backwards, but back to the issue of the property damage, we have addressed that in the briefing as well. The extent to which there is a restitutionary award, I think that's problematic for public policy. The issue of the logging road and the deforestation we already addressed, that's simply not an occurrence, not I am happy to address any further questions your honors may have regarding the exclusions of the case law. No further questions. Thank you, counsel. Mr. Burson, you have less than a minute. In terms of the suit issue, they cite a California case, but they failed to cite a Hawaii case, Pacific Employers Insurance Company v. Servco, 273 fed sub second 1149. Is that a case that is not in the briefs? No, it's in the briefs. That was another administrative hearing. The same issue was before the court. The court held that an administrative hearing is a suit for purposes of a CGL policy. Second of all, this case is not about restitution. That ruling wasn't appealed. I'm sorry? That ruling in this case was not appealed. They appealed it. That there was a suit? Burlington appealed that portion of the ruling. You appealed that? I don't think there was a cross appeal. Anyway, go ahead, there's no cross appeal. They raised it in their argument, so I wanted to respond to that. Secondly, there are specific, I cited a case to the court, C.D. Spangler v. Industrial Crankshaft, case on point, North Carolina case, Burlington's a North Carolina-based company. The holding there was every state has a sovereign interest in its natural resources. Damage thereto, including forests, constitutes property damage under a CGL policy. That case is right on point. It's in the briefs. I'd ask you to take another look at that. This case is not about restitution. I would ask you to look at the case cited by the defense to show you the difference. It goes through an analysis of what is restitution and what is not restitution. That's executive risk, indemnity versus specific educational, 451 Fed sub 2nd 1147. Read that case again. It'll make it clear that our claim is not one for restitution, but for damages under the policy and is covered. And last but not least, they rely so much on Burlington v. Oceanic Design case, but guess what? In Burlington v. Oceanic Design, Burlington provided defense. Thank you, Counsel. The case just argued will be submitted for decision and the court will adjourn.
judges: O'scannlain, Tashima, Smith